```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                 Civil No. 15-601(DSD/FLN)
```

Bubble Pony, Inc., a Minnesota
Corporation and Patrick J. Glynn,

      Plaintiffs,

v.                                          **ORDER**

Facepunch Studios Ltd., Facepunch
Limited, Facepunch Group Limited,
and Garry Newman,

      Defendants.

    Brittany N. Resch, Esq., Daniel E. Gustafson, Esq., Daniel C. Hedlund, Esq., and Michelle J. Looby, Esq. and Gustafson Glueck PLLC, 120 South 6th Street, Suite 2600, Minneapolis, MN 55402 and Stuart M. Paynter, Esq., Jennifer Murray, Esq., Sara Willingham, Esq., and Celeste H.G. Boyd, Esq. and The Paynter Law Firm, PLLC, 106 South Churton Street, Suite 200, Hillsborough, NC 27278, counsel for plaintiffs.

    Todd A. Wind, Esq. and Pamela Abbate-Dattilo, Esq. and Fredrikson & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402 and Erin Jones, Esq. and Ryan Tyz, Esq. and Tyz Law Group PC, 4 Embracadero Center, Suite 1400, San Francisco, CA 94111, counsel for defendants.

    This matter is before the court upon the motion for partial summary judgment by plaintiffs Bubble Pony, Inc. and Patrick J. Glynn. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted.

                                **BACKGROUND**

    The allegations at the center of this business dispute were set forth in the court's previous order on defendants' motion to

dismiss.  See ECF No. 40.  Because discovery in this case is still ongoing, the court will recite only those facts necessary to resolve this motion.

Defendant Facepunch is an English company, majority owned by defendant Garry Newman.  In September 2010, Newman hired Glynn as a computer programmer for video games produced by Facepunch.  Tyz Decl. Ex. 1.  In June 2012, Glynn began work on a video game entitled "RUST."  Am. Compl. ¶ 28.  The parties dispute to what degree Glynn was supervised and how much of his contribution was original.  See id. ¶¶ 28-34; Tyz Decl. Exs. 5, 6; Berry Dep. at 219.

In June 2013, Facepunch released a limited version of RUST and officially offered RUST for sale in August.  In December, Facepunch released RUST more widely on "Steam," a gaming platform.  Am. Compl. ¶¶ 33, 53.  Glynn received over $700,000 in payment for his work on RUST.[1]  Tyz Decl. Ex. 12 at 2.

In May 2014, Facepunch fired Glynn purportedly due to his unnecessarily complex coding and poor performance.  See Tyz Decl. Exs. 6, 8, 10. On January 22, 2015, Glynn registered the June 2013 version of RUST as a joint work with Facepunch and filed an

---

[1] Plaintiff Bubble Pony, Inc. is a Minnesota corporation formed by Glynn to receive his payments from Facepunch.  Am. Compl. ¶ 9.

2

application to register the August 2013 version.[2]  Am. Compl. ¶ 59.
Based on this copyright and his alleged original contributions,
Glynn claims that he is a joint author of RUST and that defendants
owe him an accounting of the profits made from RUST.  Id. ¶¶ 282-
288.

On March 12, 2015, plaintiffs filed an amended complaint
alleging a variety of contract, tort, and equitable claims against
Facepunch and Newman.  On December 7, 2015, the court dismissed
most of plaintiffs' claims except those for tortious interference
with prospective economic advantage; unjust enrichment; accounting;
and declaratory judgment of joint authorship.  Defendants assert
the affirmative defenses, among others, of implied license,
acquiescence, and assignment.  Plaintiffs now move for partial
summary judgment as to those affirmative defenses.

**DISCUSSION**

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
A fact is material only when its resolution affects the outcome of

---

[2] The record before the court does not indicate whether the application has been granted.

the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ....").

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II. Affirmative Defenses

### A. Implied License

Plaintiffs argue that the implied license defense is not a cognizable defense to a joint authorship claim. Defendants respond that an implied license is relevant to disproving that the authors of a work intended to be joint authors.

Courts may find an implied nonexclusive license where "(1) a

person requests the creation of a work; (2) the creator makes the particular work and delivers it to the person who requested it; and (3) the licensor intends that the licensee-requestor copy and distribute the work." Evert Software, Inc. v. Extreme Recoveries, Inc., No. 01-1027, 2001 WL 1640116, at *3 (D. Minn. July 25, 2001) (citing Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc., 128 F.3d 872, 879 (5th Cir. 1997)); see also Pinkham v. Sara Lee Corp., 983 F.2d 824, 831 (8th Cir. 1992) ("[U]nlike an exclusive license, an authorization can be given orally or implied from conduct.").

An implied license is a well-established defense to a copyright infringement claim, I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996), but plaintiffs have not alleged copyright infringement. Defendants do not cite, nor can the court find, any case where implied license has been recognized as a defense to a joint authorship claim. Indeed, allowing this defense would be absurd because permission to use a copyrighted work is inherent to joint authorship. Section 101 of the Copyright Act defines a "joint work" as a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Authors who create a joint work are co-owners of the copyright in that work. 17 U.S.C. § 201(a). Each author has "an independent right to use or license the use of a work, subject to a duty of accounting to the co-owners for any profits." Erickson v. Trinity

5

Theatre, Inc., 13 F.3d 1061, 1065 n.2 (7th Cir. 1994) (internal quotation marks and citation omitted). Further, contrary to defendants' claim that an implied license shows that the parties did not intend to be joint authors, courts have found that permission to use copyrighted work helps establish joint authorship. See Sys. XIX, Inc. v. Parker, 30 F. Supp. 2d 1225, 1230 (N.D. Cal. 1998) ("Defendants correctly maintain that to assert a claim of joint authorship over the sound recordings, [plaintiff] must have obtained permission to use [defendant's] musical compositions in the sound recordings."). Indeed, because joint authors have implied permission to use copyrighted work, "a joint copyright owner cannot sue his or her co-owner for infringement." Fishing Concepts, Inc. v. Ross, No. 4-82-560, 1985 WL 1549, at *7 (D. Minn. May 16, 1985); see also Zuill v. Shanahan, 80 F.3d 1366, 1369 (9th Cir. 1996).

Defendants next argue that an implied license defense would eliminate any duty of accounting for profits between joint authors. Defendants rely on Picture Music Inc. v. Bourne, Inc., 314 F. Supp. 640 (S.D.N.Y. 1970), but that case is inapposite. Picture Music stands for the proposition that profits are placed in a constructive trust when one joint author uses a copyrighted work without permission. Id. at 646-47. The case does not hold, nor does it follow, that joint authors need not account for profits when permission is given. The duty to account for profits could

conceivably end if one joint author transferred his ownership to the other, but "an implied nonexclusive license ... does not transfer ownership of the copyright." Shaver, 74 F.3d at 775. As a result, an implied license defense does not apply to the claims asserted by plaintiffs.[3]

**B. Acquiescence**

**1. Joint Authorship and Accounting**

Defendants next argue that acquiescence is a cognizable defense to plaintiffs' joint authorship and accounting claims. Acquiescence is an affirmative defense to copyright infringement where the defendant shows that "(1) the plaintiff knew of and manifested acquiescence in the defendant's infringing conduct, actual or proposed, (2) the plaintiff intended that the defendant rely on its conduct, and (3) the defendant reasonably relied to its detriment on the plaintiff's actions." Sony BMG Music Entm't v. Tenenbaum, 672 F. Supp. 2d 217, 233 (D. Mass. 2009). As stated above, however, plaintiffs have not asserted a copyright infringement claim, and defendants do not cite, nor can the court find, any case where acquiescence is a recognized defense to a joint authorship or accounting claim. Further, if the court were

---

[3] Defendants also argue that an implied license defense is relevant because Glynn claims he has a copyright in the game "Cash4Kills," which was allegedly used in the development of RUST. But plaintiffs have not alleged any copyright infringement claim for either RUST or Cash4Kills. Defendants cannot assert defenses to hypothetical claims not before the court.

to hold that acquiescence is a defense to a joint authorship or accounting claim, it would undermine the requirement that transfers of copyright ownership be in writing. See <u>Pamfiloff v. Giant Records, Inc.</u>, 794 F. Supp. 933, 937 (N.D. Cal. 1992) ("[P]laintiffs are unable to locate a single case in which a court allowed the doctrine of equitable estoppel to be used to circumvent the writing requirement of [Copyright Act] Section 204(a). [A]n assignment of copyright which is not memorialized in writing is not effective to transfer the copyright."). As a result, acquiescence is not a viable defense to the joint authorship or accounting claims.

### 2. Intentional Interference with Prospective Economic Advantage

Defendants also contend that acquiescence is relevant to plaintiffs' claim of intentional interference with prospective economic advantage. Again, defendants fail to cite a case where acquiescence was similarly used. Even if acquiescence were a cognizable defense, however, defendants have failed to establish that its elements have been met. As stated above, acquiescence requires that a plaintiff intended that the defendant rely on his representations. Moreover, "waiver or abandonment of copyright occurs only if there is an intent by the copyright proprietor to surrender rights in his work." <u>Tenenbaum</u>, 672 F. Supp. 2d at 233. Here, defendants have only alleged, without factual support, that Glynn failed to object when they sold an experimental version of

8

RUST without paying him.[4] Even if true, Glynn's failure to object does not show intent to relinquish any rights he allegedly held in RUST. See id. (rejecting the argument that intent can be shown through recklessness or a version of implied consent). Therefore, the acquiescence defense also fails as a matter of law.

**C.    Assignment**

Finally, plaintiffs argue that defendants have not established the affirmative defense of assignment. Defendants respond that Glynn assigned any interest he may have had in RUST by executing a "Confidentiality, Non-Disclosure and Non-Use Agreement."

The owner of a copyright can transfer his ownership interests to another in a signed writing. 17 U.S.C. § 204(a). Although the writing transferring the copyright need not be detailed, it must be clear. Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1158-59 (S.D.N.Y. 1996); see also Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990) ("[The writing] doesn't have to be the Magna Charta; a one-line pro forma statement will do."). Whether a copyright transfer is sufficiently clear is a question of law. Leisure Time Entm't, Inc. v. Cal Vista, No. 94-56407, 1996 WL 115167, at *1 (9th Cir. Mar. 14, 1996).

In relevant part, the parties' agreement states that: "Nothing

---

[4] Defendants cannot rely on general characterizations of the evidence. A party asserting that a genuine dispute exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

9

in this Agreement is intended to grant any rights to [Glynn] under patent or copyright, nor shall this Agreement grant [Glynn] any rights in or to the Company's Confidential Information." Tyz Decl. Ex. 2 ¶ 5. The agreement does not reference any transfer of copyright to the defendants nor does it clearly indicate that Glynn was relinquishing any purported copyright interest he may have had in RUST. To suggest otherwise is frivolous. As a result, the agreement does not meet the writing requirement of Section 204(a), and summary judgment on the defense of assignment is warranted.[5]

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that plaintiffs' motion for partial summary judgment [ECF No. 109] is granted.

Dated: April 14, 2017

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

---

[5] Although discovery is still ongoing, defendants do not argue that further discovery would strengthen any of the affirmative defenses at issue.